MARY E. HARDING, Plaintiff, *v.* GEORGE W. O'MALLEY, Defendant.

Fourth Department, June 27, 1929.

*Arthur J. Hammond,* for the plaintiff.

*Alexander W. Skinner* [*Lansing S. Hoskins* of counsel], for the defendant.

CROUCH, J.   The controversy here is submitted upon an agreed statement of facts.   Under date of February 2, 1929, plaintiff and defendant entered into a contract for the sale of certain premises owned by plaintiff, which will be referred to merely as lot No. 2. On the law day plaintiff duly tendered a deed pursuant to the terms of the contract.   The tender was refused upon the sole ground that the premises were subject to a restrictive covenant contained in a deed from Jane W. Van Giesen to William C. Buchholz, dated May 26, 1909.

Jane Van Giesen, the mother of Jane W. Van Giesen, also known as Jennie W. Van Giesen, grantor in said deed, died in 1888, seized of a tract of land known as the Van Giesen tract, situate on the south side of Washington street in the city of Geneva.   She left a last will which, after providing for debts and funeral expenses, bequeathed a certain bond and mortgage to her daughter, and then devised and bequeathed to her husband, Morrell Van Giesen, all the rest, residue and remainder of her estate, both real and personal, for life.   Upon the death of the husband, certain personal property was to go to the daughter Jennie, and all the rest, residue and remainder of the property and estate, both real and personal, of which testatrix died seized and

possessed, she directed to be sold by her executor at public or private sale, the proceeds thereof to be equally divided between her three children, William, Jane and Marcellus, share and share alike. The husband, Morrell Van Giesen, was appointed executor. In 1896 the Van Giesen tract was surveyed, subdivided into lots, and a map of such subdivision was filed in the office of the clerk of Ontario county. On January 28, 1899, Morrell Van Giesen, individually and as executor of the will, delivered to one William C. Buchholz a deed of lot No. 2, according to the map. The deed contained no restrictive covenant of any kind. Lot No. 2 was bounded on the north by Washington street, on the west by South West street, and on the east by lot No. 1. Buchholz erected on said lot No. 2 a dwelling house, which was located fifteen feet from the boundary of Washington street, and ten feet from the boundary of South West street. In 1903 William W. Van Giesen and Jennie (or Jane) W. Van Giesen, individually and as administrators with the will annexed of Jane Van Giesen, executed and delivered to said Buchholz a deed of lot No. 1. That deed contained a restrictive covenant against the erection of any building on the premises conveyed nearer than fifteen feet from the street line.

At this point, therefore, Buchholz was the owner of lot No. 2, which was unrestricted, and of lot No. 1, which was restricted. On May 7, 1888, Marcellus Van Giesen, one of the three children of Jane Van Giesen mentioned in her will, deeded to his sister, Jennie W. Van Giesen, all his right, title and interest in the Van Giesen tract. Thereafter a judgment was docketed in favor of one Conrad against Marcellus Van Giesen, execution thereon was issued, and the alleged undivided one-third interest of Marcellus Van Giesen in the Van Giesen tract was sold to Conrad, who subsequently obtained a sheriff's deed therefor. In 1904 Conrad and his wife quitclaimed to Jane W. Van Giesen whatever interest he had acquired by the sheriff's deed in the Van Giesen tract. Under date of April 10, 1909, Buchholz conveyed to one Maney lot No. 1. The deed contained the same description of the premises and the same restrictive covenant contained in the deed of this lot to Buchholz, above referred to. The deed to Maney was not recorded until June 15, 1909, and meantime, under date of May 26, 1909, Jane W. Van Giesen gave a quitclaim deed to Buchholz, conveying lots Nos. 1 and 2. At this time lot No. 1 was vacant, and lot No. 2 had on it the dwelling house built by Buchholz in 1899 as above stated. It is this deed executed on May 26, 1909, which gives rise to the controversy. In it lot No. 2 as a first parcel is described in exactly the same words as it was described in the original deed to Buchholz. In a separate paragraph, and as a second parcel,

there is a description of lot No. 1 as it appeared in the deed under which Buchholz had acquired title to it, and then, separated from the description only by a comma, followed the covenant by which Buchholz, as party of the second part, covenanted that no building should be erected on the " hereby granted " premises nearer than fifteen feet from the street line.

By mesne conveyances, none of which contained any restrictive covenant, lot No. 2 came to be owned by the plaintiff.

We are asked here to decree specific performance by defendant of his contract with plaintiff, upon the ground that lot No. 2 is not subject to the restrictive covenant. To support her contention plaintiff says that we may interpret the deed in question in view of the surrounding circumstances and the situation of the parties; and that so interpreted, it becomes clear that the apparent subjection of both lots to the restrictive covenant arises from an error of the scrivener and was not within the intention of the parties to the deed. It is further said that upon an interpretation so made of a recorded instrument the principle of *stare decisis* will apply and will protect defendant from future litigation. We think there are difficulties. Before resort may be had to surrounding circumstances there must appear on the face of the instrument itself from the words there used some doubt or ambiguity which calls for interpretation. There is nothing of that sort here. The language and the meaning are clear and unambiguous. If doubt there is, it arises only from the extrinsic facts to which we are asked to resort for the solution of that doubt. But even if we were to resort to these extrinsic facts as they are disclosed in the agreed statement, and should be disposed to adopt plaintiff's interpretation, we doubt whether defendant would be protected from future litigation under the principle of *stare decisis*. Here we may resort only to the facts stated in the agreement. We do not know that changed or different facts may not be established in some future action. We think we cannot say definitely and with finality that Jane W. Van Giesen did not intend to impose a restriction on lot No. 2.

We are, however, of the opinion on other grounds urged by plaintiff that plaintiff has a marketable title free from the restriction. The original deed to Buchholz in 1899 made by the executor of Jane Van Giesen under the power of sale in her will conveyed a clear and complete title to lot No. 2. If the children of Jane Van Giesen ever had, under the terms of her will, an interest or title in the real property itself, that interest or title was subject to the exercise of the power of sale. The power of sale could only be terminated by the election of all the children to take the property *in specie*. (*Mellen* v. *Mellen*, 139 N. Y. 210; *Matter of*

*Fagan*, 166 App. Div. 244; *McDonald* v. *O'Hara*, 9 Misc. 686; affd., 144 N. Y. 566.) Whatever interest Jane acquired from Marcellus was in, or was transferred to, the proceeds of sale. As to the Conrad interest, the execution sale and the title, if any, thereunder fell with the exercise of the power. (*N. Y. C. R. R. Co.* v. *First Nat. Bank*, 232 N. Y. 330.) The deed in question, then, from Jane W. Van Giesen to Buchholz, over which the controversy exists, was wholly nugatory, conveyed no title and was insufficient, therefore, to impose an obligation on the grantee or a restriction on the lot.

Judgment of specific performance for plaintiff as prayed for.

All concur. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

Submitted controversy determined in favor of plaintiff, without costs.